(C.D. 2250)

R. W. SMITH ET AL. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided April 17, 1961)

*Stein & Shostak* (*Marjorie M. Shostak* of counsel) for the plaintiffs.
*William H. Orrick, Jr.,* Assistant Attorney General (*Murray Sklaroff,* trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: The importations in controversy were invoiced as "STEEL COTTON TIES PARTLY MANUFACTURED." They consist of hot-rolled steel strips, $^{15}/_{16}$ of an inch in width and 19 British wire gauge (0.042 inch) in thickness, in coils.

Three protests, 320888–K, 322990–K, and 322991–K, were consolidated for trial.

The merchandise was classified by the collector of customs as steel in strips in paragraph 316(a) of the Tariff Act of 1930 (19 U.S.C. § 316(a)), as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, and duty was imposed thereon at the rate of 9½ per centum ad valorem.

Plaintiffs contend, in their protests, that the merchandise should be classified as band steel, partly manufactured, within the purview of paragraph 314 of said act (19 U.S.C. § 1001, par. 314), as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, and dutiable at 0.1 cent per pound; or, in the alternative, that it should be granted freedom from duty in paragraph 1604 of said act (19 U.S.C. § 1201, par. 1604). Inasmuch as plaintiffs do not press the latter claim, it is deemed to have been abandoned.

The pertinent text of the statutes involved reads as follows:

Paragraph 316(a) of the Tariff Act of 1930, as modified, *supra:*

All flat wires and all steel in strips not thicker than ¼ inch and not exceeding 16 inches in width, whether in long or short lengths, in coils or otherwise, and whether rolled or drawn through dies or rolls, or otherwise produced:

Not thicker than 0.01 inch * * *
Thicker than 0.01 inch but not thicker than 0.05 inch_____ 9½% ad val.

Paragraph 314 of said act, as modified, *supra:*

Hoop or band iron, and hoop or band steel, cut to lengths, or wholly or partly manufactured into hoops or ties, coated or not coated with paint or any other preparation, with or without buckles or fastenings, for baling cotton or any other commodity_____ 0.1¢ per lb.

The undisputed facts are that plaintiffs who generally import steel cotton ties in cut lengths were, in this instance, obliged to import the commodity in long lengths in coils due to mechanical difficulties in the manufacturing plant in England. The importations were manufactured pursuant to the importers' specifications for standard cotton ties in bundles, with the exception that they were not cut to length. In other words, the material had the same chemical and physical qualities, width and gauge, common to normal cotton tie steel.

After importation, the merchandise was placed in a warehouse where it was cut to the desired lengths of 11½ feet; it was then placed in bundles together with buckles and bagging, making a complete package for shipment to points principally in Texas and Oklahoma.

With this factual background, plaintiffs contend that the subject merchandise should properly be classified as band steel, partly manufactured into ties for baling cotton or other commodities, within the meaning of said paragraph 314.

Paragraph 314 provides, among other things, for band steel, cut to lengths, or wholly or partly manufactured into ties for baling cotton or any other commodity. If the commodity had been imported "cut to lengths," it would have met the precise terms of paragraph 314. Plaintiffs contend that, since the operation of cutting the coils of band steel into lengths of 11½ feet prepares them for use as ties for baling cotton, it logically follows that, in its imported condition, the band steel was partly manufactured into ties for baling cotton and that, unless plaintiffs' interpretation be adopted, "* * * there could be no article of commerce to which the language 'band steel, * * * partly manufactured into * * * ties, * * * for baling cotton' could properly relate * * *," thereby leaving the quoted language inoperative and meaningless.

While we cannot, upon the facts now before us, definitely foresee the possible application of the words "* * * wholly or partly manufactured into * * * ties * * *," and it would be idle for us to speculate upon it—we are clearly of the opinion that the subject merchandise is not comprehended by the quoted language.

In its brief, the Government contends that the issue herein is controlled by the decisions of our appellate court in *United States* v. *The Harding Co.*, 21 C.C.P.A. (Customs) 307, T.D. 46830, and *The Harding Co. et al.* v. *United States*, 23 C.C.PA. (Customs) 250, T.D. 48109.

In the first *Harding* case, a product, consisting principally of asbestos yarn and wire woven together, imported in running lengths of about 100 feet and intended for use when cut to proper lengths and holes drilled in it as brake linings for automobiles, although commercially capable of various other uses, was held to be properly classified by the collector of customs as manufactures of asbestos yarn, rather than as parts of automobiles, finished or unfinished, as claimed by the importer in that case.

In the second *Harding* case, merchandise identical with that in the former case, but which the record discloses was used only in the manufacture of brake lining for automobiles, was again held to be properly classified by the collector of customs as manufactures of asbestos yarn, rather than as parts of automobiles. In the course of its opinion, the court stated:

As long as the merchandise is not cut before importation or is not marked when imported so that nothing remains to be done to make it an automobile brake lining except to cut it into pieces of predetermined length, we regard it as wholly immaterial that the cutting of the roll is delayed until it is fixed to and riveted upon the brake shoe. In the condition as imported, the long roll of brake-lining material has in no manner been dedicated to the making of any particular brake lining. To be a part of an automobile, that is a brake lining, it must be more than mere material for making a brake lining.

The doctrine of the *Harding* decisions has direct application to the case now before us.

Moreover, many years ago, in *Biddle Purchasing Co.* v. *United States*, 60 Treas. Dec. 763, T.D. 45239, this court was confronted with a situation practically on all fours with the present controversy. It appears from the opinion in that case that certain so-called baling bands, imported in rolls approximately three hundred feet in length, and which, after importation, were cut to desired lengths for baling merchandise, were held to be properly classifiable as:

* * * bands and strips of iron or steel, * * * not specially provided for, * * *

in paragraph 313 of the Tariff Act of 1922. The court rejected the claim of plaintiff therein that the merchandise should be classified in paragraph 314 of said act for:

Hoop or band iron, and hoop or band steel, cut to lengths, or wholly or partly manufactured into hoops or ties, * * * for baling cotton or any other commodity, * * *.

It is noted that the language above quoted from paragraphs 313 and 314 of the Tariff Act of 1922 was copied verbatim in paragraphs 314 and 316, respectively, of the Tariff Act of 1930. We have, therefore, a clear case of congressional adoption of judicial interpretation.

Consideration has been given to the various cases cited in the brief of plaintiffs, but, in view of our conclusion, it becomes unnecessary to review them here.

Upon the authorities cited and for the reasons stated, the protests are overruled on all grounds.

Judgment will issue accordingly.